ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| MANUEL LIRIO SÁNCHEZ<br><br>Recurrido<br><br>v.<br><br>CAR AUTO, INC.; POPULAR AUTO, LLC; GARAGE ISLA VERDE, LLC; MAPFRE DE PUERTO RICO; **MERCEDES BENZ USA, LLC**.<br><br>Peticionario | KLRA202300577 | *Revisión Judicial* procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: SAN-2020-0007694<br><br>Sobre: Compraventa de vehículo de motor |

Panel integrado por su presidenta, la Juez Barresi Ramos, la Jueza Santiago Calderón y el Juez Campos Pérez[1]

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de mayo de 2024.

Comparece ante nos la parte recurrente, Mercedes Benz USA, LLC. (MBUSA), quien nos solicita la revocación de la *Resolución* del Departamento de Asuntos del Consumidor (DACo), emitida el 1 de septiembre de 2023 y notificada el día 6 siguiente. En la referida determinación administrativa, el DACo declaró con lugar la querella del epígrafe instada por la parte recurrida, el Sr. Manuel Lirio Sánchez (señor Lirio Sánchez). En consecuencia, decretó la resolución del contrato de compraventa del vehículo de motor en controversia y ordenó la devolución de las prestaciones. Impuso también el pago de honorarios de abogado.

**I.**

La presente causa se originó el 10 de noviembre de 2020, ocasión en que el señor Lirio Sánchez presentó ante el DACo la Querella Núm. SAN-2020-0007694, en contra de Car Auto, Inc., (Car Auto), Garaje Isla Verde (GIV), su aseguradora, Mapfre Puerto Rico (Mapfre) y la entidad financiera Popular Auto, LLC. (Popular

---

[1] El Hon. José I. Campos Pérez sustituyó a la Hon. Gloria Lebrón Nieves, por virtud de la Orden Administrativa OATA-2024-021, emitida el 2 de febrero de 2024.

Número Identificador

SEN2024_____

Auto).[2] En esencia, alegó que el 11 de julio de 2020 compró en Car Auto una guagua de pasajeros usada de 2018, marca Mercedes Benz, modelo Sprinter Van, matrícula 988-964, número de serie 8BRPE7CD6JE154030 y con un millaje de 4,592. El precio de venta fue de $45,995.00. Luego de pagar un pronto de $3,000.00, el recurrido financió la diferencia con Popular Auto.

Al salir del concesionario, el señor Lirio Sánchez se detuvo en un puesto de gasolina, apagó la unidad, echó combustible y la guagua no encendió. Luego de notificar a Car Auto e intentar encender el vehículo, al cabo de una hora y veinte minutos, logró dar marcha hasta su hogar. El problema reincidió. Toda vez que el vehículo de motor estaba cubierto por la garantía del manufacturero, a partir de 21 de julio de 2020, el recurrido acudió a GIV en varias ocasiones, con el fin de reparar el problema de no encendido y otros múltiples fallos.

Así las cosas, Car Auto instó su alegación responsiva.[3] Acentuó que el motor de la unidad estaba cubierto por la garantía de MBUSA. Indicó que el recurrido había llevado la guagua a GIV, quienes fungen como proveedores autorizados del servicio de garantía del fabricante.

Por su parte, GIV compareció y solicitó la desestimación de la querella por falta de parte indispensable, en alusión al "manufacturero y/o distribuidor", MBUSA.[4] Aseveró que todos los reclamos alegados en la querella estaban cubiertos bajo el contrato de garantía extendida que adquirió el recurrido. GIV apuntó que no había vendido la unidad y había prestado los servicios solicitados. Asimismo, Car Auto se unió a la petición desestimatoria por falta de parte indispensable.[5]

---

[2] Apéndice, págs. 1-7.
[3] Apéndice, págs. 8-12.
[4] Apéndice, págs. 21-33
[5] Apéndice, págs. 34-36.

El señor Lirio Sánchez no estuvo de acuerdo y adujo que el negocio jurídico no fue con el fabricante.[6] El DACo, sin embargo, determinó que, para adjudicar adecuadamente la controversia, resultaba necesario la inclusión de MBUSA. A esos efectos, instruyó al recurrido a enmendar su reclamación.[7] La enmienda al epígrafe, sin alegaciones específicas en contra del recurrente, se notificó el 23 de abril de 2021.[8]

DACo realizó una inspección el 18 de mayo de 2021.[9] El vehículo no presentó el fallo de no encender. Sobre la posible causa, el perito indicó:

> Al momento de la inspección el motor estaba en temperatura ideal, y prendía bien. Los motores Diesel cuando están bien fríos tienen un sistema de calentamiento "Blow Spark" bujía encandécete y hay que esperar que el sistema caliente los cilindros para poder hacer la combustión ya que los motores diésel queman por temperatura y no por bujías eléctricas como los de gasolina. Entiendo que posiblemente la condición la presenta en frio y el sistema de encendido se retrae para que el sistema de calentamiento trabaje. Por tal razón no veo en el D.T.C. un registro o código por avería que se explica en la querella.
>
> Los códigos en el D.T.C. están registrados en "Storage" y no guardan relación con el defecto que explica la querella.

El señor Lirio Sánchez impugnó el informe, por no guardar relación con los múltiples desperfectos de la guagua. Solicitó otra inspección.[10]

GIV, por su parte, reiteró su petición desestimatoria.[11] El recurrido se allanó a la solicitud de GIV el 18 de julio de 2021. Empero, enumeró los siguientes problemas del vehículo: filtración del acondicionador de aire y techo manchado, golpe constante en la

---

[6] Apéndice, págs. 39-43.
[7] Apéndice, págs. 44-45.
[8] Apéndice, págs. 54-57.
[9] Apéndice, págs. 65-72.
[10] Apéndice, págs. 76-77. El 22 de noviembre de 2021, no pudo realizarse la inspección pautada porque la guagua se encontraba en otras instalaciones en reparación de hojalatería y pintura en la carrocería. Véase, Apéndice, págs. 127-129.
[11] Apéndice, págs. 73-75.

transmisión, ruido en el diferencial, al arrancar y en los asientos, así como que éstos no se pueden sacar, problemas con el seguro de la puerta del chofer, con el sensor de presión de aire de los neumáticos, las tuercas de los aros, el encendedor y con la luz de neblina. DACo acogió las enmiendas a la querella y la realización de una nueva inspección.[12] En cuanto a la petición desestimatoria de GIV, el 19 de julio de 2021, DACo dictó una *Resolución Parcial y Orden*, mediante la cual determinó desestimar la querella en contra de GIV y Mapfre.[13] No obstante, posteriormente el recurrido solicitó incorporarlos nuevamente como partes querelladas. En dicho escrito, el señor Lirio Sánchez expuso también que el tiempo que el vehículo había estado en reparación era razón suficiente para conceder los remedios solicitados en la querella.[14]

Así las cosas, el 30 de junio de 2022, se realizó otra inspección.[15] En el informe el perito de DACo expresó:

> El vehículo de combustión interna Diesel se recorrió en vías rápidas y rurales con curvas y pendientes recreando las mismas condiciones de manejo en el municipio donde reside el querellante que es de Corozal. La guagua de pasajeros no mostro problemas de tren propulsor y se comportó muy bien en carretera.
>
> De los defectos mencionados en la querella y enmiendas s[ó]lo presento [el] asunto de las luces de neblina.
>
> Luz de neblina lado pasajero mostraba en su vidrio una mancha blanqueada que aparento ser de intensidad de calor.
>
> Los defectos que menciona la querella aparentemente fueron ya reparados por garantía de manufactura.
>
> El desperfecto de las luces de neblina es un asunto de seguridad. Requiere su remplazo.

---

[12] Apéndice, págs. 86-87.
[13] Apéndice, págs. 88-90. Car Auto solicitó reconsideración de la desestimación de la querella contra GIV. Planteó que MBUSA asumió las reparaciones, por virtud de la garantía del fabricante y GIV era su proveedor. Indicó que las alegaciones de los desperfectos no reparados y los nuevos señalamientos de fallos impedían la desestimación porque GIV era parte indispensable. GIV se opuso. DACo acogió la petición de Car Auto, pero denegó reconsiderar su postura. Refiérase al Apéndice, págs. 91-103; 104-114; 115; 116-119.
[14] Apéndice, págs. 138-139.
[15] Apéndice, págs. 130-134.

El perito estimó un costo de $144.97 en piezas y labor para el reemplazo de la luz de neblina.

Ahora, durante el trámite administrativo, a comienzos del 2023, el señor Lirio Sánchez enmendó nuevamente la querella porque no le habían provisto transportación sustituta e insistió en la resolución del contrato.[16] En esta ocasión, MBUSA contestó la querella enmendada.[17] En general, negó las alegaciones de la reclamación. Sin embargo, admitió que la guagua Sprinter Van tenía la garantía del fabricante y que el vehículo todavía se encontraba en las instalaciones de GIV.

Citadas las partes a la vista administrativa a celebrarse el 11 de julio de 2023, previo a la audiencia, el señor Lirio Sánchez recalcó varios puntos. A saber: que el vehículo llevaba más de 900 días en reparación, por lo que en tres años apenas lo había utilizado; que los pagos del financiamiento por $42,995.00 estaban al día y el balance ascendía a $22,891.04; y que la garantía del fabricante continuaba vigente.[18]

Luego de acontecido el desfile de prueba documental[19] y testifical,[20] DACo dictó la *Resolución* aquí impugnada.[21] En ésta, desestimó la reclamación contra GIV, Mapfre y Popular Auto y determinó resolver el contrato de compraventa. A esos efectos, ordenó a Car Auto y a MBUSA a reembolsar al señor Lirio Sánchez el pronto pagado de $3,000.00 y las mensualidades satisfechas a Popular, así como $1,500.00 por concepto de honorarios de abogado.[22]

---

[16] Apéndice, págs. 140-143; 151-156; 157-160. Al respecto, GIV se opuso a las enmiendas a la querella e insistió en la desestimación, ya que no fue la parte vendedora. DACo declaró no ha lugar la petición. Apéndice, págs. 144-147; 161-164; 174-177.

[17] Apéndice, págs. 165-169.

[18] Apéndice, págs. 178-182.

[19] Refiérase al Apéndice, págs. 390-417.

[20] Refiérase al Apéndice, págs. 183-389.

[21] Apéndice, págs. 423-438.

[22] Reza el dictamen:

Se declara Ha Lugar la querella. Se ordena la resolución del contrato de compraventa. Se desestima la querella en contra de las partes

Insatisfecho, MBUSA solicitó la reconsideración de la decisión administrativa. Adujo que la querella carecía de alegaciones específicas en su contra. Además, arguyó que el fallo de que la guagua no encendía se reparó en la segunda visita del recurrido a GIV. DACo rechazó de plano la petición de reconsiderar. Entonces, MBUSA acudió oportunamente ante este foro revisor y señaló la comisión de los siguientes errores:

A. ERRÓ DACO AL FORMULAR DETERMINACIONES DE HECHOS Y CONCLUSIONES DE DERECHO QUE NO ESTÁN SUSTENTADAS POR EL RÉCORD ADMINISTRATIVO.

B. ERRÓ DACO AL AQUILATAR LA PRUEBA IRRAZONABLEMENTE, DEMOSTRANDO CLARO PERJUICIO Y PARCIALIDAD Y APLICAR ERRÓNEAMENTE EL REGLAMENTO NÚM. 7159, *INFRA*, AL:

1. IMPONERLE RESPONSABILIDAD A MBUSA COMO FABRICANTE, A PESAR DE MBUSA ES SÓLO EL DISTRIBUIDOR DE MERCEDES BENZ EN PUERTO RICO Y ESTADOS UNIDOS.

---

coquerelladas Popular Auto, LLC., Garage Isla Verde, LLC. y Mapfre Praico de Puerto Rico.

Dentro del plazo de veinte (20) días a partir de la fecha de notificación de la presente resolución, las partes coquerelladas Mercedes Benz USA, LLC. y Car Auto, Inc. reembolsarán al querellante Manuel Lirio Sánchez el pronto pago de tres mil dólares ($3,000.00) y las mensualidades pagadas por el querellante a Popular Auto, LLC., hasta el presente, según certificación que a esos efectos deberá emitir Popular Auto, LLC. La parte coquerellada Car Auto, Inc., Inc. [*sic*] responde solidariamente ante la resolución del contrato de compraventa. Sin embargo, queda Mercedes Benz USA, LLC. obligada frente a Car Auto, Inc. por todo lo que ésta última pague al querellante.

Dentro del plazo de veinte (20) días a partir de la fecha de notificación de la presente resolución, las partes coquerelladas Mercedes Benz USA, LLC. y Car Auto, Inc. deberán satisfacer el monto adeudado por el querellante Manuel Lirio a Popular Auto, LLC., para relevar a este de su deuda con dicha entidad financiera, de conformidad con la certificación que a esos fines deberá emitir Popular Auto, LLC. La parte coquerellada Car Auto, Inc., Inc. [*sic*] responde solidariamente ante la resolución del contrato de compraventa. Sin embargo, queda Mercedes Benz USA, LLC. obligada frente a Car Auto, Inc. por todo lo que ésta última pague a la parte querellante o al banco.

Una vez las coquerelladas cumplan con lo antes ordenado, el querellante Manuel Lirio Sánchez hará las gestiones con Garage Isla Verde para entregar la unidad a la querellada, una vez reciba la carta de saldo y las cantidades pagadas objeto de reembolso y deberá cooperar para poner el vehículo a disposición de la parte querellada y realizar el traspaso correspondiente.

Dentro del plazo de veinte (20) días a partir de la fecha de notificación de la presente resolución, Mercedes Benz USA, LLC. y Car Auto, Inc., deberán pagar al querellante Manuel Lirio Sánchez la suma de mil quinientos dólares ($1,500.00) por concepto de honorarios de abogado. Sin embargo, queda Mercedes Benz USA, LLC. obligada frente a Car Auto, Inc. por todo lo que ésta última pague al querellante.

2. IMPONERLE RESPONSABILIDAD A MBUSA A PESAR DE DETERMINAR QUE SU REPRESENTANTE AUTORIZADO EN PUERTO RICO, GIV, SÍ CUMPLIÓ CON TODO EL PROCESO DE SERVICIO Y NO LE DENEGÓ LA GARANTÍA AL QUERELLANTE.

C. ERRÓ DACO AL IMPONERLE RESPONSABILIDAD A MBUSA AUN CUANDO LA QUERELLA NO TENÍA ALEGACIÓN ALGUNA EN CONTRA DE MBUSA.

D. ES IMPROCEDENTE LA PARTIDA DE HONORARIOS DE ABOGADO.

Luego de conceder el término reglamentario a la parte recurrida para que presentara su alegato, el señor Lirio Sánchez no compareció. Así, pues, damos por perfeccionado el recurso sin el beneficio de su postura.

**II.**

**A.**

Revisamos la *Resolución* de DACo al palio de la Ley Núm. 38 de 30 de junio de 2017, *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9601 *et seq.* La Sección 4.5 de la LPAUG, 3 LPRA sec. 9675, que versa sobre el alcance de la revisión judicial, dispone que este tribunal intermedio sostendrá las determinaciones de hechos de las decisiones de las agencias, si se basan en evidencia sustancial que obra en el expediente administrativo; revisará en todos sus aspectos las conclusiones de derecho; y podrá conceder al recurrente el remedio apropiado si determina que a éste le asiste el derecho.

Es sabido que, al revisar las determinaciones administrativas finales, los tribunales apelativos estamos compelidos a conceder deferencia, por la experiencia y conocimiento pericial que se presume tienen los organismos administrativos para atender y resolver los asuntos que le han sido delegados. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde, LLC*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte.*

*Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016). Al respecto, el Tribunal Supremo de Puerto Rico ha reiterado que las determinaciones de las agencias "poseen una presunción de legalidad y corrección que los tribunales debemos respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas". *Rolón Martínez v. Supte. Policía, supra*; *Torres Rivera v. Policía de PR, supra*; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012); *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1002-1003 (2011). Por ende, nuestra intervención sólo se justifica cuando el ente ejecutivo haya obrado de forma arbitraria, ilegal o irrazonable. En esas circunstancias, entonces, cederá la deferencia que ostenta en las aplicaciones e interpretaciones de las leyes y los reglamentos que administra. *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009). En torno a esto, en *Torres Rivera v. Policía de PR, supra*, el Tribunal Supremo expuso las normas básicas sobre el alcance de la revisión judicial:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, **si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida**. (Énfasis nuestro). *Torres Rivera v. Policía de PR, supra*, pág. 628.

Así, pues, es norma asentada que **el norte al ejercer nuestra facultad revisora es el criterio de razonabilidad**. *Super Asphalt v. AFI y otro, supra*, pág. 821; *Graciani Rodríguez v. Garage Isla Verde, LLC, supra*, pág. 127; *Torres Rivera v. Policía de PR, supra*, pág. 626; *Empresas Loyola v. Com. Ciudadanos*, 186 DPR 1033, 1042-1043

(2012). Por lo tanto, intervendremos únicamente cuando el organismo recurrido haya actuado de una manera tan irrazonable que su actuación constituya un abuso de discreción. *Super Asphalt v. AFI y otro, supra*, pág. 821; *Graciani Rodríguez v. Garage Isla Verde, LLC, supra*, pág. 127; *Rolón Martínez v. Supte. Policía, supra*.

**B.**

Las garantías requeridas a los fabricantes y distribuidores de vehículos de motor en nuestra jurisdicción están reguladas por la Ley Núm. 7 de 24 de septiembre de 1979, *Ley de Garantías de Vehículos de Motor*, 10 LPRA sec. 2051 *et seq.* (Ley 7). En lo que nos atañe, el inciso (e) del Artículo 2 de la Ley 7 define "**distribuidor autorizado**" como "toda persona que se dedique a la (…) distribución de vehículos de motor de cualquier marca por concesión y autorización o **acuerdo con el fabricante o su representante de fábrica en Puerto Rico**". (Énfasis nuestro). 10 LPRA sec. 2052. Asimismo, el Artículo 11 dispone que el distribuidor autorizado, así como el distribuidor independiente o el vendedor que venda a un consumidor un vehículo de motor nuevo, vendrá obligado a prestar efectivamente los servicios de garantía de fábrica. 10 LPRA sec. 2061.

De otra parte, la Ley 7 delega a DACo la responsabilidad de implantar sus disposiciones y adoptar la reglamentación necesaria sobre el particular. Art. 13 Ley 7, 10 LPRA sec. 2063. En el ejercicio de esta facultad, DACo promulgó el *Reglamento de Garantías de Vehículos de Motor*, Reglamento Núm. 7159 de 6 de junio de 2006 (Reglamento 7159). Conforme la Regla 2 del Reglamento 7159, se aspira proteger adecuadamente la inversión de los consumidores en la adquisición de vehículos de motor, asegurando que **el vehículo sirva los propósitos para los que fue adquirido, y que reúna las condiciones mínimas necesarias para garantizar la protección de su vida y propiedad**.

La Regla 3 del Reglamento 7159, *Alcance y aplicación*, dispone que la reglamentación aplica "a toda persona natural o jurídica que se dedique por sí misma, o por medio de su representante o agente, o como agente o representante del fabricante, o como intermediario de otra persona, a la venta y/o servicio de vehículos de motor nuevos o usados en Puerto Rico". Por igual, la Regla 4 del Reglamento 7159 dispone expresamente que su **interpretación es liberal a favor del consumidor**. Véase, *Polanco v. Cacique Motors,* 165 DPR 156, 164 (2005). En cuanto a la Regla 15.1, la norma establece que el distribuidor autorizado y el vendedor, **a nombre y en representación del fabricante o manufacturero**, deberán honrar la garantía de fábrica del fabricante o manufacturero, en términos de **millaje y duración**. "**Esto independientemente del lugar donde y de la persona de quien el consumidor adquiera dicho vehículo y que el fabricante o manufacturero brinde el servicio de garantía de fábrica en un lugar de Puerto Rico**". (Énfasis nuestro). Aun cuando la precitada regla se refiere a los autos nuevos, toda vez que su letra especifica los criterios de millaje y duración, se puede colegir que aplica igualmente a los autos usados, siempre y cuando cumplan con los parámetros de la garantía.

Por último, la Regla 37 preceptúa que nada de lo dispuesto en el Reglamento 7159 limita el derecho del consumidor a ejercer cualquier acción reconocida en nuestro ordenamiento jurídico, según estatuidas en el Código Civil o leyes especiales. Por tanto, DACo, en su deber de velar por la protección de los consumidores, debe evaluar las acciones de saneamiento presentadas ante sí, conforme con las leyes especiales, su reglamentación, el Código Civil y la jurisprudencia interpretativa. *Rodríguez v. Guacoso Auto,* 166 DPR 433, 439 (2005). Siendo así, el recurso que nos ocupa se rige por la referida Ley 7, el Reglamento 7159 y, en su defecto, por las disposiciones del hoy derogado, pero vigente a los hechos presentes,

Código Civil de 1930, con relación al contrato de compraventa. Arts. 1334-1426, 31 LPRA ants. secs. 3741-3951.

## C.

En virtud de las aludidas disposiciones del Código Civil de 1930, en lo que respecta a la acción de saneamiento por vicios ocultos, entre las obligaciones que impone el ordenamiento a un vendedor, se encuentra su responsabilidad ante los vicios o defectos ocultos que tuviere la cosa vendida, conocido como saneamiento por vicios o defectos ocultos. Art. 1363 del Cód. Civil de 1930, 31 LPRA ant. sec. 3801. A los vicios ocultos se les denomina redhibitorios, ya que pueden deshacer la venta. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 889 (2008). En torno a la acción redhibitoria por vicios ocultos en la cosa vendida, el Artículo 1373 del Código Civil de 1930, 31 LPRA ant. sec. 3841, dispone lo siguiente:

> El vendedor estará obligado al saneamiento por los defectos ocultos que tuviere la cosa vendida, si la **hacen impropia para el uso a que se la destina o si disminuyen de tal modo este uso que, de haberlos conocido el comprador, no la habría adquirido o habría dado menos precio por ella**; pero no será responsable de los defectos manifiestos o que estuvieren a la vista, ni tampoco de los que no lo estén, si el comprador es un perito que, por razón de su oficio o profesión debía fácilmente reconocerlos. (Énfasis nuestro).

Siendo la causa de la venta para el comprador adquirir la cosa y servirse de ella, dicho propósito dejaría de realizarse si una vez entregada la cosa, se ve imposibilitado de aplicarla a los usos que le son propios. *García Reyes v. Cruz Auto Corp.*, *supra*, pág. 890, que cita a *Ferrer v. General Motors Corp.*, 100 DPR 246, 255 (1971). Por lo tanto, conforme a las disposiciones de nuestro ordenamiento legal, el comprador puede optar por desistir del contrato, con el abono de los gastos que pagó. Esta acción redhibitoria representa la restitución *in integrum,* ya que coloca a las partes en la misma condición en la que se hallaban antes de la compraventa. En la alternativa, se puede rebajar una cantidad proporcional del precio.

Dicha acción *quanti minoris* conlleva la restitución del precio percibido en proporción a la pérdida de valor de la cosa como consecuencia del defecto.

Al establecer qué son vicios redhibitorios, el Tribunal Supremo ha adoptado el criterio de "**aquellos defectos que exceden de las imperfecciones menores que cabe esperar normalmente en un producto determinado**, no siendo necesario que dichos defectos imposibiliten el uso de la cosa vendida, siempre que mermen notablemente su valor". (Énfasis nuestro). *García Reyes v. Cruz Auto Corp., supra*, pág. 891, que cita a *García Viera v. Ciudad Chevrolet, Inc.*, 110 DPR 158, 162 (1980); *D.A.C.O. v. Marcelino Mercury, Inc.*, 105 DPR 80, 84 (1976). En fin, para que proceda una acción de saneamiento por vicios ocultos deben concurrir los siguientes requisitos: (1) no deben ser conocidos por el adquirente; (2) **el defecto debe ser grave o suficientemente importante para hacer la cosa impropia para el uso a que se le destina o que disminuya de tal modo este uso que, de haberlo conocido el comprador, no la habría comprado o habría dado menos precio por ella**; (3) que sea preexistente a la venta, y (4) que se ejercite la acción en el plazo legal, que es el de seis meses contados desde la entrega de la cosa vendida. *García Reyes v. Cruz Auto Corp., supra*, págs. 890-891.

## D.

La Regla 44.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1, permite la imposición de honorarios en caso de que cualquiera de las partes, o su abogado, procedan con temeridad o frivolidad. En su parte pertinente, el inciso (d) de la mencionada norma establece lo siguiente:

> En caso [de] que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda

correspondan a tal conducta. 32 LPRA Ap. V, R. 44.1 (d).

Nuestro Tribunal Supremo ha definido el concepto de temeridad "**como aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables**". (Énfasis nuestro). *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 504 (2010). Según lo ha expresado el Tribunal Supremo, la penalidad aspira "disuadir la litigación frívola y fomentar las transacciones mediante sanciones que compensen a la parte victoriosa los perjuicios económicos y las molestias producto de la temeridad de la otra parte". *Id.*, pág. 505. La determinación de si una parte obró con temeridad descansa en la sana discreción del juzgador. *P.R. Oil v. Dayco*, 164 DPR 486, 511 (2005). La imposición del pago de honorarios de abogado es imperativa cuando se concluye que una parte incurrió en temeridad. *Id.* En cuanto a los criterios de revisión, por constituir un asunto discrecional del tribunal sentenciador, los foros apelativos solo intervendremos en dicha determinación cuando surja un claro abuso de discreción. *Jarra Corp. v. Axxis Corp.*, 155 DPR 764, 779 (2001).

### III.

En la causa presente, MBUSA aduce que DACo erró al formular determinaciones de hechos y conclusiones de derecho que no están sustentadas por el récord administrativo. Alega que aquilató la prueba de manera irrazonable. En particular, sostiene que el fallo de la guagua de no encender se solucionó el 13 de agosto de 2021. Añade, a su vez, que DACo aplicó erróneamente el Reglamento 7159, ya que la querella no tenía alegaciones especificas en su contra, por ser sólo el distribuidor de la marca y el hecho que GIV, su representante autorizado, cumplió con la garantía. También impugna la concesión de honorarios por temeridad.

Examinamos la evidencia del expediente administrativo y discutimos los errores en conjunto.

Según reseñamos, la compraventa en Car Auto de la guagua de pasajeros Sprinter 2018 usada, sujeta a la garantía del manufacturero y con apenas unas 4,592 millas, se llevó a cabo el 11 de julio de 2020. El señor Lirio Sánchez enunció que la guagua de pasajeros comenzó a dar problemas desde el mismo día de la compra.

> Bueno, me dispuse a echar combustible porque me la entregaron sin combustible. Apagué mi unidad, llené el tanque. Cuando la voy a encender, no enciende. Llamo al "dealer", quedan en enviarme una grúa. Cuando la grúa viene de camino, pasaron dos horas aproximadamente, trato de encender la unidad y la unidad enciende. Me comunico otra vez con el "dealer", el dealer me hace un acercamiento para hacer una cita con Garaje Isla Verde para llevarla lo antes posible para una inspección, para que ellos me la verificaran ya que contaba con garantía de Mercedes-Benz.[23]

La querella se interpuso apenas a cuatro meses de la transacción y la vista administrativa en DACo se celebró tres años después. En todo ese periodo, la unidad vehicular sólo estuvo en posesión del señor Lirio Sánchez poco más de medio año, de los cuales no la utilizó para los fines que la adquirió. El recurrido declaró que compró la guagua de pasajeros específicamente para el disfrute de su familia. Sin embargo, por la incertidumbre de que, una vez se apaga, el vehículo tarda en encender, dejó de utilizarla con ésta. "El único mes que la tuve me dejó en Utuado", expresó. Allí tuvo que esperar dos horas en un puesto de gasolina, junto a su familia.[24]

> P    [...] ¿Usted lo llegó a utilizar para otro propósito posteriormente? Fue que no quedó claro su expresión.
>
> R    Para sacar a mi familia a pasear, no. El poco tiempo que lo utilicé, no lo volví a utilizar para sacar a mi familia. Sí lo utilicé para ir a hacer compra, [...] pero me iba solo.

---

[23] Apéndice, pág. 245 líneas 8-22.
[24] Apéndice, págs. 254 líneas 18-24; 255 líneas 1-12.

P     Okey.

R     Si yo me quedaba, estaba solo.[25]

Nótese que, de conformidad con la orden 473977, fechada el 15 de junio de 2021, desde esa fecha hasta la audiencia en DACo, el servicio de hojalatería no se había completado y la guagua continuaba en posesión del recurrente.

Se desprende del expediente que el señor Lirio Sánchez llevó el vehículo al menos en cinco ocasiones a GIV. En la primera ida al taller, luego de diez días con la unidad, GIV no logró un diagnóstico. Ese día el recurrido pagó $506.90 por mantenimiento.[26] Es meritorio mencionar que, según las declaraciones del Sr. Emmanuel Polanco Marrero (señor Polanco Marrero) de GIV, la unidad no contaba con un paquete de mantenimiento.[27]

En la segunda ocasión, el señor Polanco Marrero testimonió que tampoco surgió un código, pero explicó que, según las indicaciones del señor Lirio Sánchez, determinaron que el "conductor plate" electrónico del cuerpo de válvulas de la transmisión era lo que estaba ocasionando la condición. Indicó que fue reemplazado. Dijo que entre ambas revisiones transcurrieron catorce días.[28] Destacamos que, luego de que la unidad estuviera dos meses y medio aproximadamente en reparación, el recurrido afirmó que el problema para encender resurgió posteriormente.[29]

En la tercera oportunidad en el taller, la unidad presentó otros tipos de fallos. Empero, el problema de encendido continuó, aunque el recurrido explicó que el vehículo encendía más rápido.[30]

---

[25] Apéndice, pág. 268 líneas 7-19.
[26] Apéndice, págs. 246 líneas 11-24; 247 líneas 1-5; 257 líneas 10-24; 258 líneas 1-5; véase, además, Apéndice, págs. 399-401.
[27] Apéndice, págs. 281 líneas 1-7.
[28] Apéndice, págs. 306-308.
[29] Apéndice, págs. 246 líneas 21-24; 247; 248 líneas 1-8; refiérase, además, Apéndice, págs. 402-407.
[30] Apéndice, págs. 248 líneas 8-24; 249 líneas 1-7; véase, Apéndice, págs. 408-411.

En la cuarta ocasión en GIV, el recurrido llevó la guagua debido a unas manchas en el plafón y moho en las barras de los asientos, causados por unas filtraciones. También solicitó examinar el techo de la guagua, el cual resultó oxidado.[31]

En la última visita al taller, esta vez por el servicio de hojalatería y pintura, el señor Lirio Sánchez entregó la guagua el 15 de junio de 2021 "y más nunca salió".[32] Según testificó el señor Polanco Marrero, técnico automotriz licenciado y supervisor del taller de GIV, el recurrido reportó varias fallas que se recogieron en la orden 473977, éstas son: manchas de agua en el plafón del techo, entra agua por el acondicionador de aire y una de las parrillas está suelta, escucha un zumbido cuando la unidad recorre entre 48 a 55 millas por hora, siente un golpe al arrancar, cuando el vehículo está a temperatura operacional, la puerta trasera y los asientos emiten ruidos cuando la carretera es irregular, así como que el asiento trasero no se puede remover.[33]

De otro lado, a preguntas de su representación legal, el señor Lirio Sánchez explicó que continuaba pagando puntualmente la mensualidad de $786.00.[34] Por ello, el recurrido solicitó como remedio la reversión del negocio y la devolución de lo invertido.

De la inspección de 30 de junio de 2022, el perito aseguró que "[d]e los defectos mencionados en la querella y enmiendas s[ó]lo present[ó] [el] asunto de las luces de neblina". Y afirmó que éste era "un asunto de seguridad".[35] En contraste, el recurrido aseveró en su testimonio que GIV, quien ofrece los servicios del manufacturero, no había resuelto todos los problemas de la guagua, la cual continuaba

---

[31] Apéndice, págs. 249 líneas 12-24; 250 líneas 1-9; refiérase también al Apéndice, págs. 412-414.
[32] Apéndice, págs. 250 línea 21; 251 líneas 1-17; véase, [32] Apéndice, págs. 415-417.
[33] Apéndice, págs. 278-279; 282-283.
[34] Apéndice, pág. 252 líneas 13-19.
[35] Apéndice, pág. 421.

en el taller a la fecha de la vista administrativa.[36] A preguntas de la representación legal de MBUSA, el recurrido aceptó que no le habían negado la garantía, pero acotó: "Me han resuelto algunos detalles, pero lo fuerte no se ha resuelto".[37]

Al declarar el testigo de GIV acerca de la orden 473977 de 15 de junio de 2021, el señor Polanco Marrero corroboró que la unidad mostraba corrosión en ciertas áreas, como el techo, por lo que, al llover, el agua se filtraba al interior de la unidad vehicular. La reparación de este defecto requiere un trabajo de hojalatería, cuya "reparación complicada" y a un costo de entre $10 y $15 mil no ofrece GIV.[38] A su entender, la aludida reparación no era un elemento de seguridad.[39] Aclaró que en ninguna ocasión GIV denegó algún servicio al recurrido ni le cobró suma alguna de dinero.[40] Claro está, cuestionado por la representación legal del señor Lirio Sánchez, confirmó que, a la fecha de la vista, el trabajo del plafón no había sido finalizado y la unidad continuaba sin entregar, ya que el problema de filtración persiste y "[e]s la que queda pendiente de corregir".[41] "Cuando llegó de ese taller de hojalatería, que se hizo la inspección de la unidad, verdad, no quedó dentro de los parámetros aceptables que Mercedes-Benz especifica y, pues, la unidad tuvo que regresar a hojalatería, verdad, para poder corregir la condición".[42] El señor Polanco Marrero no pudo precisar cuánto más tardaría la reparación, aunque luego afirmó que "a fines de esta semana" el taller de hojalatería estaría retornando la unidad.[43] Dijo que GIV no tenía control sobre el tiempo que tarde el taller de hojalatería.[44]

---

[36] Apéndice, págs. 259 líneas 13-24; 260 líneas 1-6.
[37] Apéndice, pág. 265 líneas 3-20.
[38] Apéndice, págs. 284; 285 líneas 9-14; 290 líneas 19-22.
[39] Apéndice, pág. 286 líneas 18-19.
[40] Apéndice, pág. 280; reiterado en Apéndice, págs. 310 líneas 14-24; 311 líneas 1-2.
[41] Apéndice, págs. 292 líneas 2-14; 296 líneas 11-12.
[42] Apéndice, pág. 309 líneas 11-17.
[43] Apéndice, págs. 301 líneas 22-24; 302 líneas 1-4; 304 líneas 4-10.
[44] Apéndice, pág. 311 líneas 10-22.

En lo que compete a este caso, el señor Polanco Marrero aseveró que la garantía del manufacturero de un vehículo de pasajeros es de cuatro años, 50 mil millas. En el caso de los vehículos comerciales, es de tres años y 36 mil millas.[45]

Al finalizar la vista, la representación legal del recurrido acotó que lo irrefutable es que el señor Lirio Sánchez no ha tenido posesión de la unidad de motor por varios años.[46] El jurista abogó por la responsabilidad compartida entre Car Auto y MBUSA. Solicitó también honorarios por temeridad, ya que había estado en las manos de éstos entregar al recurrido una unidad de igual precio, pero lo obligaron a litigar el caso.[47] La representación legal de GIV hizo eco de la petición del recurrido.[48] Popular Auto recalcó que únicamente había fungido como financiador.[49]

Evaluado el expediente ante nos, somos del criterio que no le asiste la razón a MBUSA al plantear que el fallo de la guagua de no encender se solucionó el 13 de agosto de 2020; ni siquiera el 30 de octubre de 2020, cuando se entregó la unidad. De hecho, se desprende palmariamente de la prueba testifical que, durante el escaso tiempo que el recurrido condujo el vehículo, el problema resurgió, aunque el no encendido demoraba menos tiempo. Este fallo, unido a otros defectos señalados, como el problema de corrosión y filtración, exceden las imperfecciones que se esperan de un vehículo de motor. Al conciliar los hechos y el derecho aplicable, entendemos que la guagua de pasajeros en controversia es impropia para el uso familiar por el cual fue adquirida.

Con relación a la presunta ausencia de alegaciones específicas en contra del recurrente, opinamos que el hecho que MBUSA es el distribuidor autorizado de la marca en Puerto Rico, el Reglamento

---

[45] Apéndice, pág. 301 líneas 2-8.
[46] Apéndice, pág. 322 líneas 18-20.
[47] Apéndice, págs. 325 líneas 4-24; 326 líneas 1-17.
[48] Apéndice, pág. 333 líneas 8-21.
[49] Apéndice, pág. 338 líneas 12-19.

7159 lo compele a responder. Como esbozamos antes, en representación del fabricante o manufacturero, MBUSA debe honrar la garantía de fábrica, de acuerdo con el millaje y duración. Ello, con independencia de dónde se adquiera el vehículo o si el vehículo es nuevo o usado. En este caso, la guagua Sprinter cumplía tanto con los parámetros de la garantía de un vehículo comercial como de pasajeros. Recuérdese que, al momento de la compraventa y el inicio de los reclamos por los múltiples fallos, la unidad tenía solamente dos años y un poco menos de cinco mil millas. Por lo tanto, es un hecho irrefutable que la guagua de pasajeros estaba cobijada por la garantía del recurrente, máximo representante de la marca en Puerto Rico. Dicha garantía se materializa a través de GIV, quien, a diferencia de MBUSA y Car Auto, no recibió beneficio económico alguno por el negocio de distribución y compraventa del vehículo de motor, cuyos fallos reiteramos frustraron el propósito de su adquisición.

Decididamente, DACo no incidió al responsabilizar a Car Auto y a MBUSA para resarcir al recurrido. Al disponer de esta manera, antepuso los intereses del consumidor sobre los del vendedor y el distribuidor, respectivamente. A base de los hechos probados, colegimos que la interpretación de la Ley 7 y del Reglamento 7159 por parte de DACo, como agencia especializada, es razonable y, por ende, acreedora de nuestra deferencia judicial.

En cuanto a los honorarios por temeridad, acordamos no intervenir con la discreción de DACo. Previo a la celebración de la vista administrativa, la causa presente se extendió por varios años, en los que el señor Lirio Sánchez —sin faltar a su obligación dineraria aun cuando no tenía posesión del vehículo por estar en constante reparación— solicitó remedios a la situación insostenible que enfrentaba. Por ejemplo, sugirió intercambiar la unidad vehicular y la aplicación del descuento por los pagos satisfechos. De

esta petición en particular se hizo completa abstracción, lo que obligó al recurrido a continuar incurriendo en gastos legales e interminables trámites con GIV para honrar la garantía del fabricante. Como se conoce, incurre en temeridad quien, sin necesidad, prolonga un litigio evitable.

**IV.**

Por los fundamentos expuestos, confirmamos la *Resolución* impugnada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones